v. Kobel & Houston. Good morning, Your Honors. May it please the Court. Good morning. Until December of 2015, J-PAY required all users of its electronic money transfer services to accept the same arbitration clause. That arbitration clause stated that any dispute, claim, or controversy among the parties arising out of or relating to this agreement shall be resolved in arbitration before under either the commercial rules of the American Arbitration Association or the consumer rules of the American Arbitration Association, depending on the amount in controversy. And it went on to say, quote, the ability to arbitrate the dispute, claim, or controversy shall likewise be determined in the arbitration. In other words, the arbitration agreement that J-PAY drafted and that all of its customers, including Ms. Kobel and Ms. Houston, entered into before December of 2015 clearly and unmistakably stated that the parties wanted an arbitrator to resolve any questions about arbitrability of disputes. The interpretation of the agreement, whether a particular dispute was covered by the agreement, all of these things the parties expected and intended and made clearly and unmistakably made that intent clear and unmistakable in the language. They wanted those things to be decided by an arbitrator. And so J-PAY spends a lot of time in its brief discussing whether or not the availability of class arbitration is presumptively for the court or an arbitrator to decide. But this court does not need to wade into that issue in order to reverse the district court and remand this claim to be decided in the first instance by an arbitrator. It can. The court can answer that question of where the presumption should lie. And in our brief, we describe why the for-justice plurality opinion in Basel v. Green Tree, why that reasoning was sound, why it is entirely reasonable to expect arbitrators to resolve these sorts of contract interpretation questions, such as whether the language of a particular agreement allows for class arbitration. That's essentially reading and interpreting the contract. That's consistent with what the Supreme Court said in Stolt-Nielsen, which is if arbitrators are going to decide this, which is what the arbitrators did in Stolt-Nielsen, they have to do it based on what the contract says. But there's another point. Ms. Kilbride, you're asking us to disagree with four other circuits who have all decided that the availability of class arbitration is a substantive issue for the court to decide? We're not asking you to do that, Your Honor. We think there's a good faith and strong argument for reaching a different conclusion, the same conclusion that the California Supreme Court has made and many other district courts have made. But every circuit that's weighed in on the issue has concluded that the better answer to the question is that the question of availability of class in an arbitration proceeding is presumptively a court question rather than an arbitrator's question because it's substantive gateway organic kind of question rather than a matter of pure procedure. Why is that wrong? Assuming, I agree with you that we don't have to get to the question if the party's intent is clearly evinced in the language they've used, it's certainly rebuttable as a presumption. But we're going to that question. Why isn't it presumptively correct to say that the question of arbitrability includes within its ambit the availability of class relief and therefore that's something presumptively for the courts to decide? Well again, the reasons that, you know, the type of arbitration, what Justice Breyer talked about as, you know, in Basel as this is not a question of whether the dispute is arbitrable. Here both parties agree the dispute about whether J-PAY collects unconscionable fees and misleads consumers by not disclosing the kickbacks to correctional institution. That dispute, that substantive dispute is arbitrable. The only question that the parties are, have different positions in on whether that dispute can be arbitrated on a class basis, whether all of the individual claims of people who have all agreed to this same arbitration provision with this same language and are asserting the same claims can be consolidated and aggregated. And that, you know, just looking at the Supreme Court's decisions in Shady Grove Orthopedic and in Roper, you know, the class actions have been described as a procedural device having nothing to do with substantive rights. And we would say following that logic and following the logic of the Basel plurality, this is a question of whether a particular arbitration procedure is available. Well that's what I wanted to ask you about. I would have normally thought that procedural questions arise once the obligation to arbitrate a matter is established. Procedural matters might include notice requirements, estoppel, latches, statute of limitations. But by contrast, the obligation to arbitrate is on a different level. It asks a different series of questions and it looks more substantive to me. Maybe I'm misapprehending that. But doesn't that fall within the more basic gateway question itself? Do you get there with this category of relief or is this really more akin to a procedural question? Notice, how many days, all of this business. It looks more organic, basic, and substantive to me. Why am I misapprehending this? I'm not sure if you're misapprehending it. What some of the circuit court opinions, such as the Scout Petroleum from the Third Circuit and the Eighth Circuit opinion, you know, have done is they say, well this is really important. Things that are dispositive. This is what the Fourth Circuit did. They said things that are dispositive and that go to whether the dispute is arbitrable at all. These are threshold questions. Well, there are lots of things that have been identified by the Supreme Court and HOSM as potentially dispositive, such as the statute of limitations. If the claim was not timely filed, then it couldn't go to arbitration at all. It's not how important it is. It's what were the party's expectations. That's what Justice Breyer talked about in First Options of Chicago and HOSM. What are the party's expectations? And, you know, here, well this kind of gets back into the second path, the path of what did the parties say in their agreement and whether or not, you know, there is clear and unmistakable delegation here. The party's expectations here are that- Of course, it doesn't make it any of the less organic, basic, and substantive if the parties agree unambiguously and express their intent in writing by contract that they want the claim, they can say it, and they get to control their destiny in that way. And they did say it here. This is, again, the second path that I pointed out. So the first path is the one we've just been discussing, you know, what is the presumption. The second path is to do what the Fifth Circuit did in Robinson v. J&K Administrative Management and what the Second Circuit did in Wells Fargo Advisors v. Sappington and what several judges in this court, including Judge Graham in the Southern District of Florida, looking at almost identical contract language in another J-PAY arbitration agreement, which is to say if the parties delegate all questions of arbitrability, if they have a delegation clause like they do here, explicit language that says, you know, here what it says is the ability to arbitrate the dispute claim or controversy shall likewise be determined in the arbitration threshold issues go to arbitration. That is enough to bring even assuming, you know, arguendo that the availability of class arbitration is a threshold issue. That's enough to delegate that particular threshold issue along with all the others. We have to ignore the additional language, though, in the arbitration agreement that says J-PAY reserves all rights not expressly granted if we accept your argument, wouldn't we? I don't think you do because, again, as we stated in our reply brief, you know, for something to be a right that is reserved, it has to be something that's identified in the law as a substantive right, and the ability to proceed on a class basis has been to the contrary. The idea that that is a substantive right has been rejected by the U.S. Supreme Court most recently in Italian Colors vs. American Express that, you know, this is simply a procedural device and that parties do not have a right to bring their substantive statutory rights using that procedural device. They can go individually into arbitration and litigate their issues. And so, you know, again, that the idea that there should be a heightened requirement, something more that J-PAY should have to put in its agreement if it wants to delegate this one particular issue. Can you tell us specifically, looking at the text of the agreement, the contract itself, what it is in the agreement the parties signed on to that clearly evinces an intent to arbitrate these kinds of questions? I would point you to two things. I would point you to the language I already mentioned, which is the express delegation language. There is a claim here. There are actually several claims here. There are class claims. They were pled as class claims. And so the ability to arbitrate those class claims shall likewise be determined in the arbitration. There's Florida law that says parties contract in contemplation of existing law. Florida law has contemplated and allowed for class actions and aggregation of small value claims for decades. J-PAY was aware of that. And another thing J-PAY was aware of, and you asked for what would I point to, the second thing I would point to is J-PAY's reference to the AAA commercial and consumer rules, both sets of rules. And those two sets of rules, based on this court's 2013 opinion in Southern Communication Services versus Thomas, both incorporate the AAA's supplementary rules for class actions. Those supplementary rules for class actions have been in force since 2003. This court decided Thomas in 2013 saying that if the parties use AAA rules, they have also incorporated the class supplementary rules. The Fifth Circuit decided the same thing using the same analysis a year earlier, 2012, in Reed versus Miami University, Florida Metro University. So J-PAY's counsel presumably knew all of this. It should have known all of this. If it was reasonably diligent, it would have known how the law was being interpreted, that the AAA supplementary rules were being incorporated, and both courts and arbitrators were finding them incorporated. If J-PAY did not want an arbitrator to decide the availability of class proceedings, it had a very easy way to fix that, make that intention clear, which was to carve out from the agreement, you know, arbitrators shall decide all threshold questions of arbitrability except for the availability of class proceedings. We don't want arbitrators deciding that. Lots of parties have done that. We give examples at pages 29 to 30 of our opening brief of what that language looks like, but you need look no further. Of course, it would have saved everybody a whole lot of time and money if the contract specifically said beyond the ability to arbitrate the dispute, claim or controversy shall likewise be determined in arbitration if you added a clause that said including any question about the availability of class relief. The ability to arbitrate the dispute, claim or controversy including whether or not the parties are entitled to access to class relief shall likewise be determined in the arbitration. If you had said that, we wouldn't be in court, would we? We wouldn't, but we also, if that was what was required, then Rent-A-Center would have, Rent-A-Center versus Johnson would have come out the other way. Well, I'm not, we're here to decide whether it was required. I'm simply saying the parties prospectively have it in their power to make sure that everybody knows what they intend. All you had to do was add, and all you would prospectively have to do is add a single clause. I have that right, don't I? Well, I think if I understand the question, if they wanted to make clear that it was included, we're saying that what they did was they made clear by adding a carve out that it was not included in the scope of the delegate. Right, but you have to read that into dispute, claim or controversy. And I'm simply saying if you use the words I'm talking about, there would be no dispute. And the point I'm trying to make. About whether it's included between, in the words dispute, claim or controversy. The point I'm trying to make is that there's no other type of controversy, no other issue where the courts have required enumeration, and including claims about unconscionability, and including claims about whether this particular dispute falls within the scope, and including claims about fraud. There is no other type of dispute or category of controversy that courts have required specific enumeration within the delegation clause in order to bring it within the scope of the delegation clause. That seems to be what J-PAY is arguing for here. If we want class claims to be, or the availability of class arbitration to fall within delegation, we have to say so using those precise words. But that would be a new rule that applies to nothing else. And yes, they're right. The Third and Eighth Circuits have talked about something heightened being required. But what the language that the Third and Eighth, and even the Sixth Circuit, in all of those cases we're looking at, did not have an express delegation clause. All of those cases we're just looking at is reference to the AAA rules enough to clearly and unmistakably. I think the clock's got you, but you've reserved a full three minutes for rebuttal, and we'll give you that full time. Thank you.  Good morning, Your Honors. My name is Val Friedman. I represent J-PAY. May it please the Court, I just wanted to open with something that Counsel for Koble just said, which is there is no other issue that the courts have required enumeration. And respectfully, I think that's wrong. In Stolt-Nielsen, the Supreme Court specifically held that not in the arbitrability context, not in the who decides context, but in the substantive is there consent to class arbitration context, the court specifically held that there must be consent to class arbitration above and beyond the consent to regular bilateral arbitration. Now, I think as a necessary consequence, just as a logical matter of that decision, if the court required additional indicia of consent when determining whether there is consent to class arbitration, where the pro-arbitration presumption applies, then how much more so they would certainly require that additional indicia of consent in the class arbitrability context when the reverse presumption applies. At bottom, Your Honors, this case is about ambiguity. Yes, J-PAY could have drafted its contract. Tell me where the ambiguity is. Now, we're going really to the second question. I'm not asking you whether or not the issue is presumptively for the court or the arbitrator. Let's assume for the purposes of my question, we assume that it is generally a question for the court, that it's so basic to arbitrability that it's a judicial question rather than an arbitrable question. We all agree that it can be rebutted if the parties clearly intend by contract to ask the arbitrator to decide that question. So I'm asking you why this language doesn't clearly evince the intent to do just that. The language I'm talking about is, any other dispute, claim, or controversy among the parties, this is after they were talking about disputes involving a claim for $10,000 or less. Any other dispute, claim, or controversy among the parties arising out of or relating to this agreement shall be resolved by and through arbitration, administered by the AAA under its commercial arbitration rules, and then it says, the ability to arbitrate the dispute, the claim, or controversy shall likewise be determined in the arbitration. What do you suppose the parties meant when they said the ability to arbitrate the claim? We know what the claim was here. The dispute or the controversy was to be determined by the arbitrator. Absolutely, and I just want to be clear, Your Honor. JPA does not hold that there has been no delegation. JPA's opinion is, there has certainly been a delegation of arbitrability through that exact clause for matters of bilateral arbitrability. The ambiguity that we're pointing to is a result of the Supreme Court's reverse presumption, or what the Supreme Court calls in Howsam, the anti-arbitration presumption, or the strong pro-court presumption, Howsam describes it as. To reverse that presumption, the court has to find clear and unmistakable consent. Any ambiguity invalidates the delegation. In fact, the Third Circuit has held that it is such a high burden, it is characterized as an onerous burden. So with that in mind, and you must keep that in mind when interpreting the contract language, and that's in the Supreme Court's Kaplan case, saying that you must interpret the contract with state law principles, but this court has added an important qualification. It must be viewed through the lens of the reverse presumption. So with that in mind, the scope and interpretation of a delegation clause is a question of contract interpretation, and under Florida law, you must look at the entire contract when interpreting a contract clause. JPA's contract never mentions class arbitration. It provides only for bilateral procedures and for bilateral rules. The AAA commercial rules are only bilateral. It uses singular language saying things like a claim by the user. It provides for expedited arbitration which the Supreme Court has held to be the antithesis of class arbitration. It limits arbitration to the two parties of the agreement, and as Judge Gales found in the district court, it is a bilateral agreement that never contemplates class arbitration. Therefore, when JPA delegated arbitrability in its purely bilateral contract, it never intended to delegate a matter of arbitrability that could only arise in class arbitration. And as I'll get to in one second, three circuits have already agreed that this is a reasonable reading of the clause to limit a delegation of arbitrability to bilateral matters and not class. But I think JPA's real point here is that this court doesn't need to decide if the interpretation JPA's putting forth is correct or if the interpretation COBOL's putting forth is correct. It doesn't need to reach that question. All it has to say is whether or not JPA's assertion may be correct. And if it's possible, or as the third circuit said in the Chesapeake Appalachia case, if it is conceivable that all JPA intended to do was delegate matters of bilateral arbitrability, then the reverse presumption applies, tie goes to the runner, and JPA has not clearly delegated matters of class arbitrability. And it's important, I think, to stress that Judge Gales in the district court agreed that this was a potential reading of the clause. So to reverse the district court, this court would have to find that Judge Gales credited a completely unreasonable interpretation of JPA's delegation clause. Now, as I mentioned before, JPA's asserted interpretation of limiting a delegation of arbitrability to only bilateral issues is not a creature of JPA's, it's not a construct of JPA's own imagination. It comes from the Reid case in the Sixth Circuit, which held that because the agreement never mentioned class arbitration, and I quote, the agreement here can just as easily be read to speak only to issues related to bilateral arbitration. And the court held that that was therefore, quote, at best. Let me ask you, help me again with the language, going back to the text of the agreement. Yes. The agreement begins with the language, in the event of any dispute, claim, or controversy among the parties arising out of, that language couldn't be any broader. We have specifically interpreted the use of the phrase any to include all. Could that have been any broader? That couldn't be broader, Your Honor, but the use of the word any is in respect to the agreement to arbitrate and not the delegation clause itself. And I think it's important that the- Well, I don't understand why that flows from what you, from the language. The language again says in the event of any dispute, claim, or controversy among the parties arising out of or relating to the agreement. And then it says any other dispute, that is to say all other disputes, every dispute, claim, or controversy among the parties arising out of or relating to this agreement shall be resolved by and through arbitration and the claim shall likewise be determined in arbitration. No, I understand. I think- That's the problem that you have, it seems to me. Other than actually having put in the clause that they could have put in and you could have put in, which might have been even more crystal clear, it seems to me you've got a tough argument because any means every. They're talking about every dispute and they're referring all of that to arbitration. Every dispute, every claim, every controversy shall likewise be determined in arbitration. Right. I'm having, I'm just speaking for myself, I'm having trouble getting around the breadth and clarity of that language even though I think it is correct as you say and argue that they didn't put in that particular clause. I'm not sure that I understand why they had to. I- I don't see any patent or latent ambiguity in these words. I think that there are two things. The Third Circuit, the Sixth Circuit, and the Eighth Circuit have reviewed similar language and found it wasn't sufficient. But I think that in JPAY's, the fact that JPAY included an actual delegation of arbitrability clause, the fact that it said the ability to arbitrate the dispute, claim, or controversy shall likewise be determined in the arbitration means, I think, that the clause saying any dispute, claim, or controversy shall be arbitrated cannot include matters of arbitrability because there's a specific clause governing arbitrability. So JPAY has evidence through its use of language saying this is how I'm going to delegate. It has specifically then excluded delegation issues. Let me ask the question in a slightly different way. We've got a case that's close. I don't think it's on all fours, but maybe it's helpful and maybe you can help me with how we would apply it to this case. We've got Binding 11th Circuit precedent that when we're examining the question of intent to delegate questions of arbitrability, it's shown through the incorporation of the AA rules into the agreement itself. In Terminex, we held that when the parties incorporate the rules of the AAA into their contract, they clearly and unmistakably agree, that's the language in the opinion, that the arbitrator should decide whether the arbitration clause applies, a basic, general, organic question. And when I looked at the language in Terminex and compared it to the language in this case, I was unable to find much of a difference. There the relevant clause said arbitration shall be conducted in accordance with the commercial arbitration rules then in force of the AAA. Here, the terms incorporated AAA's rules three times, including the phrase that I read to you which parallels the language in Terminex. How do we get around Terminex? Absolutely, Your Honor. Actually, the Third Circuit in Chesapeake Appalachia and the Eighth Circuit in the Catamaran case specifically cite to this court's case in Terminex and say that the Terminex case is dealing with a bilateral arbitration case. And therefore, it never had to grapple with the fundamental changes that class arbitration brings that the Supreme Court espoused in the Stolt-Nielsen case and the Concepcion case. And therefore, they both held that bilateral arbitration cases carry very little weight in the class arbitration context. I think Terminex is not binding on this court because it dealt with a bilateral arbitration issue. And we have to, if you do not accept J-Pay's assertion that is, you know, the Supreme Court has said in Stolt-Nielsen that the Eighth Circuit has accepted, the Sixth and the Third Circuit have accepted, the Fourth Circuit has accepted that this is a substantive question of arbitrarility that is so fundamentally different than bilateral arbitration, then yes, Terminex would bind this court. But I think it's not a far step to agree with the Third and the Eighth Circuit's express findings that Terminex is not relevant to the analysis. And I just want to get back to the ambiguity issue that the court was raising before. The Third Circuit has some pretty enlightening language in the Chesapeake-Appalachia case where they say, again, that the leases at issue in the Chesapeake-Appalachia case could just as easily be read to speak only to issues of bilateral arbitration. And they got there for the same reason J-Pay is saying, singular language used in the contract, bilateral rules chosen, no express incorporation of the supplemental rules or anything that could govern a class arbitration. They then, therefore, said that it was conceivable that the parties may have as opposed to the distinctive question of class arbitrability. The trouble you have here is you have the language that any dispute, including all gateway issues, go to arbitration according to the agreement here. I'm sorry, one more time? Any dispute is the problem that you have. I still haven't heard how you get around any dispute if it means all. And if it means all, and we're going to a gateway question, and this is a gateway question, why this doesn't fall within the ambit of all gateway questions which they've agreed to arbitrate? So there are two things I think I would say to that. The Sixth Circuit in Reed specifically contemplated that exact argument. They recognized that the language any dispute could be agreeing to submit any and all disputes, including disputes as to class arbitrability to arbitration. But they then held that it wasn't clear and unmistakable because despite the use of the very broad word any, class arbitration is just so outside the ambit of the party's contemplation that we can't be sure that when they said any they really meant any in regards to class arbitrability. And I think it's important in JPay's clause that the language any can't be used to talk about delegation of arbitrability because JPay has a specific clause on delegation of arbitrability. It says the ability to arbitrate the dispute claim or controversy shall likewise be determined in arbitration. If this court held that the language used in the first clause, any, included a delegation of arbitrability, then what's the purpose of JPay's delegation of arbitrability clause? By including a delegation of arbitrability clause, JPay evidenced an intent not to delegate arbitrability through its regular arbitration agreement language, including, I think it's important in this context to point out that JPay reserves all rights not expressly granted by the agreement. And the agreement never mentions class arbitration. So through that lens, the question, respectfully, I think the court has to answer is, can JPay, can what I'm telling you right now be right? Not is it right? Not if you had to make a decision. What you have to answer, I believe, is could it be true that JPay did not mean to delegate the substantive and onerous, momentous consequences of class arbitration to a court by using standard arbitration language that appears in standard bilateral arbitration agreements all over the world? Let me ask you just one final question. We're over your time, but I just want to know if you agree with your colleague, Ms. Gilbride, that we need not answer the threshold question here of whether or not the question is presumptively for the court, because here even assuming that that's so, really all we have to decide in this question to answer this dispute between these parties is whether or not the language here trumps it. That's the only thing we have to decide, right? If you decide against JPay and disagree with Judge Gales, then yes, your analysis would end there. JPay has clearly and unmistakably and despite the reverse presumption delegated. I'm asking you, if we assume arguendo that he is right and you are right, that this is generally a question for a court, and we all agree that it's rebuttable by clear language evincing the intent of the parties, all we have to do is assume it and ask whether the intent here rebutted it. Correct. Okay. Thanks very much. Ms. Gilbride, you have reserved three minutes for rebuttal. Thank you. Thank you, Your Honor. There is no ambiguity here. This question that the court has to decide begins and ends with what this court stated in the Anders case and repeated recently in Jones v. Waffle House, which is that any means all. Here, JPay stated itself in the Anders case, and all parties, including the plaintiffs here, have agreed that any disputes are resolved in arbitration, and if that weren't enough, then there is an express delegation clause, which is the same thing that the Second and Fifth Circuits said was enough to include the class availability question. There's an express delegation clause. If there's a question about arbitrability, that question of arbitrability goes to the arbitrator. That express delegation language was not present in the Third Circuit in Scowl Petroleum, in the Eighth Circuit in Catamaran, in the Sixth Circuit in Crockett. None of those cases that JPay relies on was their express delegation language. All of those cases were looking at the AAA rules and the AAA rules alone. But as if that weren't enough. Counsel, I'm wondering if one of the reasons why some courts have considered this as a the existence of some due process concerns. Now, the language suggested that would include the express delegation of the power to arbitrate the arbitrability of a class action. If that were in the contract, then that would clearly indicate that everyone who signed the agreement was willing to waive their right to have an arbitrator decide substantive questions. Here, how do we know that everyone who signed this agreement, and I'm talking about all of the consumers, were willing to delegate that right? You're only representing folks who are saying yes, that's what we want to happen. But how do we know there isn't a large group of folks out there who would say, I didn't expressly agree to have an arbitrator decide whether I would be bound by the result of a class action arbitration. I want a court to decide. My case, I don't want . . . Is there a due process issue here? If there is a due process issue, that can be resolved when the arbitrator has its clause construction award and then gives notice to the absent class members that they would then have a right to come forward . . . But they haven't agreed to let an arbitrator decide that. How do we know they have if there's not some express delegation? There is express delegation three times over, as I was saying. Obviously, this court has the power to decide whether this is enough to put folks on notice. You only represent the folks that agree with that point of view. There may be folks out there who say, no, I want a court to decide my rights under this agreement. It would be typical in any sort of class proceeding, once a class is certified and folks get notice, folks who we do not currently represent by name, although we represent the putative class, that they would have notice and the ability to be heard at that point. But here, the third type of delegation . . . So first, there's the any means all. Second, there is the express delegation clause, which neither the third, sixth, fourth, or eighth circuits had. And then there is what those courts had, finally, as a third piece, and that's the AAA rules. And what makes the 11th Circuit, what makes this court different, this court and the fifth, for many of those other courts, is that here you have binding circuit precedent that doesn't just . . . It's not just Terminix. It talks about bilateral incorporation of AAA rules, but it specifically deals with the AAA supplementary rules for class arbitrations and says that by enumerating in the clause a set of AAA rules . . . Here, it's two sets, the consumer rules and the commercial rules. In Thomas, it was a different set, the wireless rules. But by enumerating those AAA rules, the parties have also incorporated the AAA supplementary class rules. That is binding precedent here, not in the third, fourth, sixth, or eighth circuits. And that's another thing that makes this case different and that also, if there is something additional that's required, there shouldn't be, to enumerate and carve out and delegate class arbitration as opposed to any other issue of arbitrability, we have that here and we have it in spades. Let me ask the question this way. By that theory, I suppose even if the parties in this bilateral agreement had put in an express clause saying dispute, controversy, claim, including but not limited to availability of class relief, it still wouldn't be binding in given effect. From the theory that the unnamed members of a potentially putative class had not agreed, which would be another way of saying no matter what the parties said, they could never agree to allow the arbitrator to decide the question of class relief. That's the thrust of the question, I think. I think that might be right and our position would be that the due process considerations are important but that there is a time later in the proceedings of this litigation for that to arise or that could be dealt with. That may well be a powerful claim under the due process clause. All we're asking is who gets to decide it. All we're saying is that under the language of this particular agreement, as well as if you follow the logic of the plurality in Basel, an arbitrator is authorized to make these decisions to determine whether under the language of the clause class proceedings can occur and then to conduct those class proceedings, including dealing with the due process concerns of absent class members. Arbitrators are tasked with deciding all sorts of important and complex and dispositive issues under the FAA jurisprudence. The Supreme Court has looked at arbitration favorably and said that we should delegate to arbitrators to make these decisions where the parties have clearly and unmistakably advanced that intent and that is what they did here. Thank you very much counsel. Thank you all for your efforts in the case. It's an interesting case. We'll take it under advisement and move on to the